# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MATTHEW JOHN CANNON, JR.,<br><br>Defendant. | Case No. 2:19-cr-0025-RFB-VCF<br><br>**ORDER** |

## I.     INTRODUCTION

Before the Court is Mr. Cannon's Motion to Suppress [ECF No. 27]. The Court held an evidentiary hearing on this Motion at which two law enforcement witnesses testified. For the reasons stated below, the Court denies the Motion to Suppress.

## II.    FACTUAL FINDINGS

The Court makes the following factual findings based upon consideration of all of the evidence submitted at the evidentiary hearing in this case.

Detective Samuel Smith was an employee of the Las Vegas Metropolitan Police Department ("LVMPD") for over 20 years. He was so employed during the events of this case. On or about March 14, 2017, Smith was working a series of robberies in Clark County, Nevada that occurred between January 2017 and March of 2017. Through the investigation, Smith became "familiar" with Defendant Cannon and an individual named Brian Wright. During his investigation of these robberies, Smith conferred and shared information with Special Agent Chris McPeak from the Federal Bureau of Investigation.

1 On March 14, 2017, Assistant District Attorney Agnes Lexis prepared an Application For Search Warrant And Pen Register/Trap And Trace With Real-Time Precision Location ("Application") for phone number 702-208-0454, which belonged to Defendant Cannon. Smith submitted a Declaration For Search Warrant and Pen Register/Trap and Trace With Real-Time Precision Location ("Declaration"), which accompanied the Application. Smith's Declaration was made in support of his Application to the Court for an order authorizing the installation and/or use of a Pen Register and Trap and Trace device on Cannon's cellular telephone, and for numerous records generated by Cannon's cellular telephone use, including "[h]istorical call detail records including cell site/wireless base station sector and tower location information and/or GPS and/or precision location and/or distance from tower information." Smith asserted that there were "[s]pecific and articulable facts showing that there are reasonable grounds to believe that the information requested regarding Cannon's phone was relevant and material to an ongoing investigation." Smith requested Cannon's phone records from December 1, 2016, to March 14, 2017.

Smith's Declaration indicated that a robbery occurred on January 24, 2017, at the Silverton Hotel and Casino ("Silverton"). Although the robbery was captured on the Silverton's surveillance system, the robber was not identified. On February 5, 2017, another robbery occurred at the South Point Hotel and Casino ("South Point"). LVMPD officers arrived and took the robber, Israel Jackson, into custody at the South Point. On February 7, 2017, Smith obtained a search warrant for Jackson's cellular telephone, the results of which were given to Smith on February 14, 2017. On February 16, 2017, Agent McPeak shared information with Smith regarding a federal investigation into Wright's alleged participation in the robberies.

Smith indicated that Wright was in the area of the Silverton on January 24, 2017; and in the area of the South Point on February 5, 2017. Also, Wright owned a black, 4-door, 2008 BMW, 750LI with a Nevada License Plate of 59G-175. After the police took Wright into custody he called Cannon, who posted Wright's bail. Examining Wright's cellular phone records, Smith indicated that Cannon was in contact with Wright on the days of the robberies, and that Jackson was also in contact with Wright.

1       On March 12, 2017, another robbery occurred at the Silverton. The robber escaped in a
2  white Ford F-250 extended cab pick-up truck. The police found the truck and recovered
3  surveillance video from a nearby business. The video showed a black vehicle that "appeared" to
4  have a front license place and rims "which matched the rims on Brian Wright's BMW."
5       On March 13, 2017, Agent McPeak made contact with Wright's landlord who indicated
6  Cannon was occupying Wright's residence.
7       On March 14, 2017, the Court signed the Order for Cannon's cellular phone records.
8       Sgt. Jeffrey Wall has worked for the North Las Vegas Police Department ("NLVPD") for
9  thirteen years. On June 7, 2017, Wall had been working as a detective in the robbery homicide for
10 two years unit when Wright and Cannon "came up as suspects" in his investigation into two
11 robberies that occurred at the Aliante Casino sports book ("Aliante").  Wall's investigation
12 indicated that the robberies were thought to be part of a broader series of armed robberies occurring
13 throughout the Las Vegas Valley. Sgt. Wall worked alongside Det. Smith and Agent McPeak and
14 other law enforcement agents during the investigation.
15      On June 7, 2017, Sgt. Wall submitted an Application and Affidavit For Court Order to
16 obtain Cannon's call detail records. To support his request, Sgt. Wall informed the court of the
17 investigation's findings pertaining to a robbery that occurred on January 24, 2017 at the Silverton;
18 a robbery that occurred on February 5, 2017, at the South Point; a second robbery that occurred on
19 March 12, 2017 at the Silverton; a robbery that occurred on April 17, 2017 at the Aliante casino;
20 and a second robbery that occurred on May 8, 2017, at the Aliante casino. The specific details Sgt.
21 Wall offered in his application in regard to Cannon were: 1) on February 10, 2017, Wright called
22 Cannon to post his bail; 2) Wright communicated with Cannon on January 24, 2017, and February
23 5, 2017; 3) Wright had been in custody since February 10, 2017. but a black sedan with rims
24 matching Wright's vehicle was seen in video surveillance picking up the suspected robber from
25 the second Silverton robbery; 4) that Cannon was occupying Wright's residence and "was driving
26 a black BMW"; 5) that on May 8, 2017, the suspects used a White Porsche Cayenne with a
27 malfunctioning break light and "a black sedan similar in appearance to Wright's BMW; and 6)
28 that the police later found an abandoned white Porsche Cayenne with a malfunctioning brake light

and paperwork belonging to Cannon in the vehicle. Based on the aforementioned information Sgt. Wall concluded that that Wright and Cannon "are close associates involved with the planning and/or execution of the series of sports book robberies.

Accordingly, Sgt. Wall requested historical call records to provide evidence of Cannon's involvement in the Aliante-casino robberies, as well as to "provide additional associates of Cannon who may be able to provide information." On June 7, 2017, a judge granted Sgt. Wall's request for Cannon's cellular phone records for the period of April 6, 2017, through June 6, 2017.

### III.     LEGAL STANDARD

Prior to June 2018, the Stored Communication Act ("SCA") authorized a court to order the production of historical cell-site location information ("CSLI") if the government "offered specific and articulable facts showing that there are reasonable grounds to believe that…the records or other information sought, are relevant and material to an ongoing criminal investigation". 18 U.S.C. § 2703(d). In June of 2018, the Supreme Court held in Carpenter v. United States, 138 S. Ct. 2206 (2018) that the government's acquisition of historical cell-site location information regarding an individual's movements from a cell phone company is a Fourth Amendment "search" subject to the warrant requirement. Id. at 2221.

In Illinois v. Krull, 480 U.S. 340 (1987), the Supreme Court held that the exclusionary rule does not apply when police officers conduct a warrantless search "in objectively reasonable reliance upon a statute authorizing warrantless administrative searches," even though "the statute is ultimately found to violate the Fourth Amendment." Id. at 342 (emphasis omitted). The Court reasoned that, "[u]nless a statute is clearly unconstitutional, an officer cannot be expected to question the judgment of the legislature that passed the law." Id. at 349-350. And the exclusionary rule is not designed to deter unconstitutional action by legislators, who are presumed to act "in a constitutional manner." Id. at 351. Thus, unless the legislature "wholly abandoned its responsibility to enact constitutional laws" or any reasonable officer "should have known that the statute was unconstitutional," the good-faith exception applies when officers reasonably rely upon an existing statute. Id. at 355.

**IV.     DISCUSSION**

The Court finds based upon the timeline of events and the testimony of the officers that the good-faith exception applies to the unconstitutional acquisition of the cellular records in this case.

The Court first finds that it is undisputed the records were obtained in this case by court orders pursuant to the "reasonable grounds" standard under the CSA and not pursuant to a search warrant application standard of probable cause. The Court also finds that the officers did not have probable cause to obtain a warrant for Cannon's cell-site based location information. The officers only had information that connected him to individuals who appear to have committed various robberies. However, none of the information obtained by the officers provided any indication that Cannon had himself planned or participated in the planning of the robberies. The information merely suggested that he had contact with perpetrators on the days of the robberies and that he may have assisted them after their arrest. This is insufficient to establish probable cause that he was actually involved in a conspiracy to commit or plan the robberies.

However, the inquiry does not end here for purposes of the application of the exclusionary rule. See United States v. Korte, 918 F.3d 750, 758 (9th Cir. 2019)( explaining that whether there is a Fourth Amendment violation and "whether the exclusionary sanction is appropriately imposed are separate questions") (internal citations omitted); see also Krull, 480 U.S. 342 (noting that officers reasonable reliance on valid statute supports application of the good-faith exception). The Court finds in this case that Smith and Wall reasonably relied upon the CSA to apply for and obtain the cellular records in this case. Upon consideration of their testimony, the Court finds they credibly testified that they believed that they were following the law to the letter. The Court does not find that they understood or believed that their actions could be deemed an unconstitutional search.

The Court also rejects Defendant's argument that the officers should have known that their conduct would be deemed unconstitutional based upon prior constitutional precedent of the Supreme Court. There is nothing in the prior jurisprudence of the Court would have suggested that the outcome of Carpenter would have been a foregone conclusion. Indeed, it was a 5-4 majority opinion. The Ninth Circuit reached this same conclusion in Korte. See 918 F.3d at 758-59

(explaining what it would be reasonable to rely upon the CSA to obtain cellular location information). The Court therefore does not find that the officers should have known that their adherence to the requirements of the CSA would later be deemed unconstitutional. The Court thus applies the good-faith exception to the officers' unconstitutional acquisition of cellular location data in this case.

### V.     CONCLUSION

**IT IS HEREBY ORDERED** that the Motion to Suppress [ECF No. 27] is DENIED.

**DATED:** July 29, 2020.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**